**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DURWYN TALLEY, | ) |
|       Plaintiff, | ) ) ) |
| v. | ) No. 08-CV-5485 ) |
| THOMAS DART, SALVADOR GODINEZ, JOHN MUELLER, JEAN KIRIAZES, DR. DIMITRI PATRIANAKOS, DR. NAGIB ALI and ONE UNNAMED DENTIST, | ) Judge Matthew F. Kennelly ) Magistrate Judge Susan E. Cox ) ) ) |
|       Defendants. | ) ) |

### <u>SECOND AMENDED COMPLAINT</u>

Durwyn Talley ("Talley"), by and through his attorneys, and for his Second Amended Complaint against Defendants Thomas Dart ("Dart"), Salvador Godinez ("Godinez"), John Mueller ("Mueller"), Jean Kiriazes ("Kiriazes"), Dr. Dimitri Patrianakos ("Patrianakos"), Dr. Nagib Ali ("Ali") and One Unnamed Dentist ("Dentist"), alleges and states as follows:

### NATURE OF THE ACTION

1.    This is an action by Talley, an inmate in the custody of the Cook County Department of Corrections ("CCDOC"), whose constitutional rights have been violated by the Defendants' continued and consistent deliberate indifference toward his acute medical and dental needs during his incarceration.

2.    Talley brings this action pursuant to Title 42 U.S.C. § 1983 to redress violations of the Eighth Amendment, applicable to the states by incorporation into the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

3.    Talley seeks actual, consequential, compensatory and punitive damages, as well as attorneys' fees and court costs from Defendants.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the matters in controversy arise under the Constitution and laws of the United States.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to Talley's claims took place within the Northern District of Illinois.

6. This Court has authority pursuant to 42 U.S.C. § 1983 to award appropriate actual, consequential, compensatory, and punitive damages, and has authority under 42 U.S.C. § 1988 to award attorney fees and costs to successful civil rights plaintiffs.

7. Talley has exhausted all administrative remedies available to him prior to bringing this 42 U.S.C. § 1983 civil rights lawsuit within the meaning of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a).

## PARTIES

8. Talley is an inmate of the CCDOC (ID # 2008-0012209). He was incarcerated on or around February 20, 2008, and remains in custody to this day.

9. Defendant Dart is, and at all times relevant to this lawsuit was, the Cook County Sheriff and is responsible for the overall management of the CCDOC, including inmate grievances and medical care. Talley sues Dart in his official capacity.

10. Defendant Godinez is, and at all times relevant to this lawsuit was, an employee of CCDOC and acted as Executive Director, and is responsible for the management and administration of CCDOC, including inmate grievances and medical care. Talley sues Godinez in his official capacity.

11. Defendant Mueller is, and at all times relevant to this lawsuit was, an employee of CCDOC and acted as Supervisor of Program Services, and is responsible for the management

and administration of CCDOC, including inmate grievances and medical care. Talley sues Mueller in his official and individual capacities.

12. Defendant Kiriazes is, and at all times relevant to this lawsuit was, Director of Cermak Health Services, and is responsible for the management and administration of Cermak Health Services, including inmate medical care. Talley sues Kiriazes in her official and individual capacities.

13. Defendant Patrianakos is, at all times relevant to this lawsuit was, a medical doctor and an employee of Cermak Health Services and is responsible for providing medical care at CCDOC. Talley sues Patrianakos in his individual capacity.

14. Defendant Ali is, at all times relevant to this lawsuit was, a medical doctor and an employee of Cermak Health Services and is responsible for providing medical care at CCDOC. Talley sues Ali in his individual capacity.

15. Defendant Dentist is, at all times relevant to this lawsuit was, a dentist and an employee of Cermak Health Services and is responsible for providing dental care at CCDOC. Talley sues Dentist in his individual capacity.

**FACTUAL ALLEGATIONS – TALLEY'S MEDICAL AND DENTAL PROBLEMS**

**Talley Suffers From Glaucoma and is in Need of Acute Medical Treatment**

16. Talley suffers from serious glaucoma in his right eye. Glaucoma is a disease of the eye marked by increased pressure within the eyeball that can result in significant damage to the optic nerve and loss of vision.

17. On or around February 20, 2008, at the age of thirty-seven (37) years old, Talley was taken into the custody of CCDOC.

18. On or around February 20, 2008, Talley was given an initial screening by a female medical technician at Cermak Health Services. Talley informed the medical technician of

3

his glaucoma, and also that prior to his incarceration he had seen a number of ophthalmologists who recommended that he undergo surgery.

19. Approximately one week after his initial screening, Talley was examined by Patrianakos. Talley told Patrianakos that he had been told he needed surgery prior to being incarcerated. Patrianakos informed Talley that he had lost a significant percentage of the peripheral vision in his right eye and agreed that Talley was in need of surgery to treat his glaucoma.

20. Talley and Patrianakos discussed the type of surgical procedure required, and Patrianakos told Talley that, if possible, it would be better to reduce the pressure in Talley's right eye. Patrianakos informed Talley that the pressure in his eye would need to be measured on a regular basis (*i.e.*, once a month) in order to determine when surgery would be appropriate. Patrianakos also prescribed Talley two (2) additional types of eye drops to treat his glaucoma, which raised to four (4) the total number of different types eye drops that Talley was now taking.

21. Approximately one week after his first visit with Patrianakos, Talley returned to see Patrianakos for a second visit. At that time, Talley told Patrianakos that the eye drops had severe and detrimental side effects. Talley told Patrianakos that he was having a difficult time breathing, suffering from chest pains and migraine headaches, and that he was experiencing additional pain in his right eye. Prior to being prescribed the eye drops by Patrianakos and prior to his taking of four different types of eyedrops, Talley did not have any breathing problems.

22. Despite such significant negative side effects, and despite the fact that all four eye drops identified respiratory problems as associated risks with the medicines, Patrianakos directed Talley to continue taking the eye drops. Patrianakos also informed Talley that Talley needed to see an "eye specialist," and stated that he would arrange for Talley to be seen by one.

4

23. About two weeks later, Talley again saw Patrianakos, and again informed him of the serious negative side effects he was feeling as a result of treating his glaucoma with the eye drops that Patrianakos prescribed, including shortness of breath, difficulty breathing and chest pains. Once again, however, Patrianakos instructed Talley to continue using the medication. Talley had still not seen an eye specialist, but Patrianakos again promised to make sure to arrange for one.

24. Approximately one month after his last visit with Patrianakos, however, and despite Talley's repeated pleas for adequate medical treatment, Talley still had not seen an eye specialist, nor had Patrianakos even seen him again. No one was continuing to measure the pressure in Talley's eye. During that time, Talley's glaucoma became more severe, the condition of his right eye continued to deteriorate, Talley continued to suffer a loss of vision, and Talley continued to suffer severe breathing problems.

**Talley Begins to File Grievances in an Attempt to Get Adequate Medical Treatment**

25. Fearful of his deteriorating medical condition and fearful that he would eventually go blind, Talley, left with no other reasonable choice, began to file grievances with the Cook County Jail's Correctional Rehabilitation Workers in an attempt to get the medical attention he needed.

26. In those grievances, Talley documented his glaucoma and the severe negative side-effects he was suffering as a result of the medication prescribed by Patrianakos and/or Ali, and specifically noted that:

    a.    he was being denied necessary medical treatment; and

    b.    his condition was becoming more severe.

27. Some, if not all, of Talley's grievances were referred to Cermak Medical Services, where Kiriazes is the director.

5

28. Some, if not all, of Talley's grievances were reviewed by Mueller.

29. Initially, Talley's requests for medical treatment were dismissed or ignored.

30. Eventually Talley was taken to see another doctor. Talley told the doctor about his glaucoma, and also described to him the pain and suffering he was experiencing as a result of the medication prescribed by Patrianakos. The doctor ignored Talley's glaucoma, and instead prescribed Talley two (2) different inhalers, which are generally used to treat asthma. Talley, however, does not have asthma. The prescriptions were written by Ali.

31. As the weeks and months went on, Talley continued to file grievances in an attempt to seek treatment for his glaucoma. Once again, however, his grievances and other attempts were either dismissed or ignored. During this period, and despite his deteriorating condition and severe pain, neither Patrianakos nor any eye specialist saw or treated Talley.

32. During that time, Talley's glaucoma became more severe, the condition of his right eye continued to deteriorate, Talley continued to suffer from a loss of vision and Talley continued to suffer severe breathing problems.

33. Finally, Talley was taken to see another doctor. Yet, once again, this doctor ignored Talley's complaints regarding his glaucoma and the negative side effects of the medication he had been prescribed. Instead, the doctor prescribed Talley a diabetes medication. Talley, however, does not have diabetes.

34. Shortly after that visit, the breathing difficulty, chest pains and migraine headaches that Talley was suffering became unbearable to the point that Talley, fearful for his life and well-being, was forced to stop taking the eye drops that Patrianakos described. No alternative or otherwise effective treatment was prescribed, and the condition of Talley's right eye continued to worsen.

6

35. Some time later Talley wrote a letter to the John Howard Association of Illinois regarding the inadequate medical treatment that he had been receiving. The John Howard Association forwarded that letter to Kiriazes in August of 2008 to apprise her of Talley's plight.

36. Kiriazes, however, and the other Defendants, failed to act promptly even at that point and continued to deny Talley adequate medical treatment.

37. Talley's condition continued unattended for another two months, until on about October 28, 2008, when Talley was taken to Cook County (Stroger) Hospital to be examined by a specialist.

38. During that examination, Talley was informed by the doctor examining him that his glaucoma had become more severe and that surgery was required to prevent significant permanent damage to both his eye and optic nerve. As a result, Talley was scheduled to return to Cook County (Stroger) Hospital on November 3, 2008 for surgery.

39. Defendants, however failed to ensure that Talley was taken to the Cook County (Stroger) Hospital the following week for his surgery and, consequently, Talley did not have the surgery.

40. As of the filing of Talley's First Amended Complaint on January 30, 2009, nearly one year had passed since Talley was told by Patrianakos in February, 2008 that he needed surgery for his glaucoma. Since that time, and as a result of Defendants' deprivation of his rights, Talley's glaucoma has become more severe, the condition of Talley's right eye has continued to deteriorate, Talley has continued to suffer from a loss of vision, Talley has continued to suffer severe breathing problems, and Talley has continued to experience a significant amount of pain and discomfort.

7

**Talley Has a Deteriorating, Infected Tooth and is in Need of Dental Treatment**

41. Beginning around April 2008, Talley began experiencing severe pain in one of his teeth. The pain was so significant that it became difficult for Talley to eat.

42. Around that same time, and as a result of the severe pain that he was experiencing, Talley began submitting requests to visit the dentist. Those requests stated that Talley had a "hole" in his tooth, and that it was causing him excruciating pain.

43. Initially, Talley's requests for dental treatment were dismissed or ignored.

44. As a result, and after more than two months had passed since he began submitting requests to see the dentist, Talley began filing grievances with the Cook County Jail's Correctional Rehabilitation Workers in an attempt to get the dental treatment he needed.

45. For example, on or around June 20, 2008, Talley filed a grievance which specifically noted that he had "been waiting months to the see the dentist and [had] not seen the dentist yet," that he had "a huge hole in [his] tooth," and that it was "causing [him] excruciating pain."

46. Upon information and belief, some – if not all – of Talley's grievances were referred to Cermak Medical Services, where Kiriazes is the director.

47. Upon information and belief, some – if not all – of Talley's grievances were reviewed by Mueller.

48. Eventually, after he began filing grievances, Talley was taken to see Dentist. Talley explained to Dentist the intense pain that he was suffering. Talley also informed Dentist that he has plates in his jaw from a prior injury, and that he believed those may have been contributing to the pain he was experiencing in his mouth.

49. Dentist informed Talley that one of his teeth was infected, and Talley was prescribed antibiotics. Dentist scheduled a follow-up appointment for the next week.

8

50. It was not until over a month after that first appointment, however, that Talley was taken to see Dentist again, and, when he arrived for his appointment, Talley was told that he could not see Dentist because Dentist's staff was not there. Talley's appointment was rescheduled for the following week.

51. Once again, however, it was another month before Talley was taken to see Dentist. After being prescribed antibiotics for his infected tooth, Talley was scheduled for an appointment to have his tooth pulled the following week, on or around September 21, 2008. That appointment, however, never took place.

52. To that end, Talley filed a grievance on or around September 27, 2008 indicating that he was scheduled to have his tooth pulled, but that he was not taken to see Dentist, and that he continued to suffer sever pain from his infected tooth.

53. As the weeks and months went on, Talley continued to file grievances in an attempt to seek treatment for his infected tooth. Once again, however, his grievances and other attempts were either dismissed or ignored. During this period, and despite his deteriorating condition and severe pain, Dentist neither saw nor treated Talley.

54. During that time, the condition of his infected tooth continued to deteriorate, and Talley continued to suffer severe, excruciating pain. To date, Talley's tooth remains infected.

**CCDOC Refuses and/or Fails to Implement Policies to Ensure That Inmates who Suffer From Serious Acute Medical and/or Dental Conditions Are Provided Timely Care**

55. Upon information and belief, other inmates within the custody of the CCDOC who suffer from serious acute medical and/or dental conditions are, like Talley, not provided timely acute care.

56. For example, the U.S. Department of Justice (the "DOJ") on July 11, 2008, issued a report, which was addressed to Dart, that contained the findings of the investigation of the Civil

9

Rights Division and the United States Attorneys' Office into conditions at the Cook County Jail, which is run by the CCDOC. That investigation was conducted pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997. In that report, the DOJ observed that "acute care was so deficient that inmates suffered needlessly because medical staff failed to ensure that inmates met scheduled appointments, failed to monitor acute conditions, and failed to timely treat inmates' conditions." The DOJ concluded that "[Cook County Jail] fails to provide adequate and timely acute care to inmates with serious or potentially serious acute medical conditions. [Cook County Jail's] acute care services substantially depart from generally accepted correctional medial care standards."

57. Upon information and belief, Dart, Mueller, and Kiriazes have refused and/or failed to implement policies to ensure that inmates at the CCDOC who, like Talley, suffer from serious acute medical and/or dental conditions are provided timely acute care.

**COUNT I – FAILURE TO PROVIDE ADEQUATE MEDICAL TREATMENT**
**(Against Dart, Godinez, Mueller and Kiriazes in Their Official Capacities)**

58. Talley repeats and re-alleges the allegations contained in paragraphs 1 through 57 as if fully restated here.

59. Dart, Godinez, Mueller, and Kiriazes had a duty to provide all prisoners, including Talley, with adequate medical and/or dental treatment for serious medical and/or dental conditions, particularly those prisoners with acute conditions. On information and belief, however, Defendants were deliberately indifferent to Talley's medical and dental needs.

60. First, from the date of his incarceration in February 2008, Talley has had an objectively, sufficiently serious injury, namely severe glaucoma in his right eye, which demanded immediate acute care. Not only Patrianakos, but also other doctors had diagnosed that injury and mandated treatment, particularly surgery.

10

61. Second, since April 2008, Talley has had an objectively, sufficiently serious injury, namely an infected tooth, which demanded immediate acute dental care. Dentist diagnosed the injury, and scheduled an appointment to have the infected tooth pulled.

62. Third, Defendants were aware of Talley's serious medical and dental conditions and need for immediate acute care, but acted with a sufficiently culpable state of mind, in that, upon information and belief, Dart, Godinez, Mueller, and Kiriazes had been exposed to information and/or were aware that inmates at the Cook County Jail who suffered from serious acute medical and/or dental conditions, including Talley, were not being provided timely acute care, but they failed to implement policies or procedures to ensure that the inmates received timely acute care.

63. Dart's, Godinez's, Mueller's, and Kiriazes' deliberate indifference has deprived Talley of his right to be free from cruel and unusual punishment as secured to him under the Eight and Fourteenth Amendments to the United States Constitution.

**COUNT II – FAILURE TO PROVIDE ADEQUATE MEDICAL TREATMENT**
*GLAUCOMA*
**(Against Mueller, Kiriazes, Patrianakos and Ali in Their Individual Capacities)**

64. Talley repeats and re-alleges the allegations contained in paragraphs 1 through 57 as if fully restated here.

65. Defendants had a duty to provide all prisoners, including Talley, with adequate medical treatment for serious medical conditions. On information and belief, however, Defendants were deliberately indifferent to Talley's medical needs.

66. First, from the date of his incarceration, Talley has had an objectively and sufficiently serious injury, namely severe glaucoma in his right eye. Not only Patrianakos, but also other doctors had diagnosed that injury and mandated treatment, particularly surgery.

11

67. Second, Defendants were each aware of Talley's serious medical condition, but acted with a sufficiently culpable state of mind, in that they each knew Talley faced a substantial risk of harm and disregarded that risk.

68. As a result of Defendants' conduct, Talley's glaucoma has become more severe, the condition of Talley's right eye has continued to deteriorate, Talley has continued to suffer from a loss of vision, Talley has continued to suffer severe breathing problems, and Talley has continued to experience a significant amount of pain and discomfort, all of which continue today.

69. Defendants showed deliberate indifference to Talley's serious medical needs, including the need for surgery, through their actions, which include, but are not limited to, Defendants':

    a. failure to promptly arrange for a specialist to evaluate Talley and perform the surgery that was required;

    b. ignoring Talley's repeated complaints regarding the severe negative side effects of the medication he was being required to take and failing to pursue an alternative course of treatment that would have addressed those side effects;

    c. ignoring Talley's glaucoma and continuing to pursue an ineffective and/or inappropriate course of treatment, including prescribing medications for conditions that Talley does not suffer from, such as asthma and diabetes;

    d. repeated failure to provide the required medical treatment to Talley despite his numerous grievances, letters, and personal requests; and

    e. failure to ensure that Talley was taken to Cook County (Stroger) Hospital to undergo the eye surgery that was scheduled for the November 3, 2008 surgery.

70. As Supervisor of Program Services, and as a result of Talley's grievances, Mueller was aware of the risks associated with Talley's serious medical condition, yet disregarded those risks by failing to ensure that Talley's received adequate medical treatment, including an effective course of treatment for his glaucoma.

12

71. As Director of Cermak Health Services, and as a result of Talley's grievances and letter to the John Howard Association, Kiriazes was aware of the risks associated with Talley's serious medical condition, yet disregarded those risks by failing to ensure that Talley's received adequate medical treatment, including an effective course of treatment for his glaucoma.

72. Both Patrianakos and Ali were aware of the risks associated with Talley's serious medical condition – indeed, Patriankos recommended surgery almost one year ago – yet both disregarded those risks by failing to ensure that Talley's received adequate medical treatment, by failing to provide an effective course of treatment for his glaucoma including surgery and by continuing to prescribe medications that were ineffective and/or inappropriate given their negative side effects.

73. Upon information and belief, Mueller and Kiriazes were aware of and consented to Patrianakos and Ali's failure to adequately treat Talley's glaucoma.

74. Defendants' deliberate indifference has deprived Talley of his right to be free from cruel and unusual punishment as secured to him under the Eighth and Fourteenth Amendments to the United States Constitution.

### COUNT III – FAILURE TO PROVIDE ADEQUATE MEDICAL TREATMENT
*INFECTED TOOTH*
**(Against Mueller, Kiriazes and Dentist in Their Individual Capacities)**

75. Talley repeats and re-alleges the allegations contained in paragraphs 1 through 57 as if fully restated here.

76. Defendants had a duty to provide all prisoners, including Talley, with adequate dental treatment for serious dental conditions. On information and belief, however, Defendants were deliberately indifferent to Talley's dental needs.

13

77. First, Since April 2008, Talley has had an objectively and sufficiently serious injury, namely an infected tooth. Dentist diagnosed the injury, and scheduled an appointment to have the infected tooth pulled.

78. Second, Defendants were each aware of Talley's serious dental condition, but acted with a sufficiently culpable state of mind, in that they each knew Talley faced a substantial risk of harm and disregarded that risk.

79. As a result of Defendants' conduct, Talley's infected tooth has become more severe and Talley has continued to experience a significant amount of pain and discomfort, all of which continue today.

80. Defendants showed deliberate indifference to Talley's serious dental needs, including the need to have his tooth pulled, through their actions, which include, but are not limited to, Defendants':

    a. ignoring Talley's repeated complaints regarding the severe and excruciating pain he was suffering as a result of his infected tooth;

    b. repeated failure to provide the required dental treatment to Talley despite his numerous grievances and requests.

81. As Supervisor of Program Services, and as a result of Talley's grievances, Mueller was aware of the risks associated with Talley's serious dental condition, yet disregarded those risks by failing to ensure that Talley's received adequate dental treatment.

82. As Director of Cermak Health Services, Kiriazes was aware of the risks associated with Talley's serious dental condition, yet disregarded those risks by failing to ensure that Talley's received adequate dental treatment.

83. Dentist was aware of the risks associated with Talley's serious dental condition, yet disregarded those risks by failing to ensure that Talley received adequate dental treatment,

14

including failing to remove Talley's infected tooth even after scheduling an appointment to do so.

84. Upon information and belief, Mueller and Kiriazes were aware of and consented to Dentist's failure to adequately treat Talley's infected tooth.

85. Defendants' deliberate indifference has deprived Talley of his right to be free from cruel and unusual punishment as secured to him under the Eighth and Fourteenth Amendments to the United States Constitution.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Durwyn Talley, respectfully requests that this Court:

A. Declare the conduct of Defendants Dart, Godinez, Mueller, Kiriazes, Patrianakos, Ali and Dentist to have violated the rights guaranteed to Talley under appropriate Federal Law;

B. Order Defendants Dart, Godinez, Mueller, Kiriazes, Patrianakos, Ali and Dentist to make whole Talley by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful practices;

C. Grant Talley actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendants Dart, Godinez, Mueller, Kiriazes, Patrianakos, Ali and Dentist;

D. Award Talley his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

E. Enter such other appropriate relief.

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rule of Civil Procedure 38(b), Talley demands trial by jury for all of the issues pled so triable.

    Respectfully submitted,

    DURWYN TALLEY

    By: s/ Jeffrey P. Swatzell
        One of His Attorneys

Mark L. Johnson
Jeffrey P. Swatzell
Seyfarth Shaw LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
Phone: (312) 460-5000
Fax: (312) 460-7000

CH1 11652691.1

# **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 23, 2009, a true and correct copy of the foregoing FIRST AMENDED COMPLAINT was electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/EF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

        s/ Jeffrey P. Swatzell

Mark L. Johnson
Jeffrey P. Swatzell
Seyfarth Shaw LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois
Phone: (312) 460-5000
Fax: (312) 460-7000

*Attorneys for Plaintiff Durwyn Talley*

CH1 11652691.1